**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY FISHER, a citizen of Ohio, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. |
| MEDLINE INDUSTRIES, LP, an Illinois corporation or limited partnership with its principal place of business located in Illinois; | ) ) ) ) ) | |
| ADVANCED MEDICAL SOLUTIONS LTD., a British corporation with its principal place of business located in the United Kingdom; | ) ) ) ) | |
| ADVANCED MEDICAL SOLUTIONS GROUP PLC; a British corporation with its principal place of business located in the United Kingdom; and | ) ) ) ) | |
| SOLVENTUM COPORATION, a Delaware Corporation with its principal place of business located in Minnesota, | ) ) ) ) | |
| Defendants | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff GARY FISHER brings this Class Action Complaint on behalf of himself, and all others similarly situated, against Defendants MEDLINE INDUSTRIES, LP, ADVANCED MEDICAL SOLUTIONS LTD., ADVANCED MEDICAL SOLUTIONS GROUP PLC, and SOLVENTUM CORPORATION, stating and alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

## INTRODUCTION AND NATURE OF ACTION

1.      This is a product liability, negligence and breach of warranty action to recover damages suffered by the Plaintiff and Class Members arising out of the use by Plaintiff and Class Members of a product called Maxorb Extra CMC/Alginate Wound Dressing manufactured, marketed, and sold by Defendant Medline Industries, LP, Advanced Medical Solutions Ltd., and Advanced Medical Solutions Group plc, and sold and distributed by Defendant Solventum Corporation.  Plaintiff Gary Fisher was injured and suffered a serious and life-threatening infection after using this product, which compromises patient sterility and causes serious infections.   Plaintiff Gary Fisher seeks damages on behalf of himself and on behalf of all others similarly situated.

2.      Maxorb Extra CMC/Alginate Wound Dressing (hereinafter "Maxorb Extra Dressing") was recently recalled by Defendant Medline Industries, LP and Defendants Advanced Medical Solutions Ltd. and/or Advanced Medical Solutions Group plc.

3.      In the letters and notices notifying Plaintiff and other class members of the recall, Medline Industries, LP announced that Maxorb Extra Dressing, which was distributed and shipped directly to Plaintiff by Solventum Corporation contained defects rendering it incapable of maintaining a sterile barrier and making it susceptible to causing and inducing patient infections.  The recall notices mailed by Medline Industries, LP stated that its contract manufacturer had initiated the recall, and the recall notice for Maxorb Extra Dressing posted by the FDA identified Advanced Medical Solutions Ltd. as the recalling firm/manufacturer. *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=210769.

4.      As a direct and proximate result of the negligent acts and omissions and wrongful conduct of Medline Industries, LP,  Advanced Medical Solutions Ltd., Advanced Medical Solutions Group plc, and Solventum Corporation, Plaintiff Gary Fisher and Class Members were subjected to the risk of serious and potentially life-threatening infections. Even those Class Members who are not currently suffering an active infection due to their use of Maxorb Extra Dressing are nonetheless subject to a heightened, ongoing risk of infection, necessitating medical monitoring.

## PARTIES

5.      At all relevant times, GARY FISHER ("Plaintiff") was and is a resident and a citizen of Ohio.

6.      At all relevant times, Defendant MEDLINE INDUSTRIES, LP ("Medline") was and is a corporation or limited partnership organized and existing under the laws of the State of Illinois with its principal place of business located in Northfield, Illinois and doing business in Ohio.

7.      At all relevant times, Defendant ADVANCED MEDICAL SOLUTIONS LTD. was and is a corporation organized and existing under the laws of the United Kingdom with its principal place of business located in the United Kingdom, and doing business in Ohio.

8.      At all relevant times, Defendant ADVANCED MEDICAL SOLUTIONS GROUP PLC was and is a corporation organized and existing under the laws of the United Kingdom with its principal place of business located in the United Kingdom, and doing business in Ohio.  Defendant ADVANCED MEDICAL SOLUTIONS GROUP PLC may also be known as ADVANCED MEDICAL SOLUTIONS GROUP plc.

9. Defendants ADVANCED MEDICAL SOLUTIONS LTD. and ADVANCED MEDICAL SOLUTIONS GROUP PLC will hereinafter collectively be referred to as "AMS."

10. At all relevant times, Defendant SOLVENTUM CORPORATION ("Solventum") was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Saint Paul, Minnesota and doing business in Ohio.

11. MEDLINE INDUSTRIES, LP, ADVANCED MEDICAL SOLUTIONS LTD., ADVANCED MEDICAL SOLUTIONS GROUP PLC, and SOLVENTUM CORPORATION may hereinafter collectively be referred to as "Defendants."

## JURISDICTION AND VENUE

12. This Court is vested with jurisdiction over this matter pursuant to 28 USCS § 1332(d) because this is a class action in which the matter in controversy exceeds the sum of $5,000,000 and members of the class, including Plaintiff, are citizens of a State different from any Defendant. Plaintiff is a citizen of Ohio; Medline is a citizen of Illinois; AMS is a citizen of the United Kingdom; and Solventum is a citizen of Delaware and Minnesota.

13. This Court is vested with venue of this action because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district. Plaintiff resides in and suffered his injuries in Columbiana County.

14. This Court has personal jurisdiction over the Defendants because Defendants have transacted and continue to transact business in Ohio, and because Defendants have committed the acts and omissions complained of herein in the State Ohio.

## ALLEGATIONS COMMON TO ALL COUNTS

15.     At all relevant times, Medline designed, engineered, developed, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, labeled, advertised, promoted, packaged, marketed, supplied, distributed, and sold Maxorb Extra Dressing to the consuming public in the State of Ohio and throughout the U.S., including the Maxorb Extra Dressing that was used by and injured the Plaintiff.

16.     At all relevant times, AMS designed, engineered, developed, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, labeled, advertised, promoted, packaged, marketed, supplied, distributed, sold and/or caused to be sold or distributed Maxorb Extra Dressing to the consuming public in the State of Ohio and throughout the U.S., including the Maxorb Extra Dressing that was used by and injured the Plaintiff.

17.     At all relevant time, Solventum sold and distributed Maxorb Extra Dressing to the consuming public in the State of Ohio and elsewhere, including the Maxorb Extra Dressing that was used by and injured the Plaintiff.

18.     Plaintiff recently underwent a medical procedure and was treated with Maxorb Extra Dressing(s).  The Maxorb Extra Dressing was defective and unreasonably dangerous as it was incapable of maintaining a sterile barrier and is highly susceptible to causing and inducing patient infections.   Plaintiff suffered a severe and life-threatening infection after using the Maxorb Extra Dressing.

19.     Plaintiff suffered injuries and incurred damages as a result of defects in the Maxorb Extra Dressing and as a result of the Defendants' negligent and wrongful conduct.

20.     Medline recently recalled the subject Maxorb Extra Dressing product and concealed and admitted to the defects and risks associated with the product that are set forth in this Complaint.  In a letter or notice to Plaintiff dated October 21, 2024, Medline wrote, in relevant part:

> Medline Industries, LP is issuing a recall for specific item(s) and lot(s) of Maxorb Extra CMC/Alginate Wound Dressings.  Medline's contract manufacturer has initiated a recall due to defects on pouches that could compromise the device's ability to maintain a sterile barrier. Additionally, patches of burnt or cracked polyethylene have been identified on the inside face of the primary packaging that could also compromise sterility. A device with compromised sterility could result in an infection to the patient if the product is used. The contract manufacturer has indicated that if product has already been used on patients under a three-month time period, patients should be monitored for symptoms during routine follow up.

*See* October 21, 2024 letter to Gary Fisher from Medline, attached as Exhibit A.

21.     It is believed that Medline sent substantially similar, if not identical, letters or notices to other patients and consumers who have used Maxorb Extra Dressing, including the Class Members as defined herein.

22.     Defendant's negligent and wrongful conduct set forth in this Complaint were willful, fraudulent, malicious, outrageous, and oppressive.  In engaging in the negligent and wrongful conduct set forth herein, Defendants demonstrated a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.  In addition to compensatory damages and other specified damages, Plaintiffs accordingly seek an award of punitive damages in an appropriate amount to be determined by the jury at the time of trial.

## CLASS ALLEGATIONS

23.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, on behalf of the following class:

> All individuals to whom Defendant(s) and/or its/their authorized agent(s)
> sent or caused to be sent a notice similar or identical to Exhibit A.

24.     Alternatively, Plaintiff brings this class individually and, pursuant to Rule

23 of the Federal Rules of Civil Procedure, on behalf of the following alternative class:

> All individuals to whom Defendant(s) or its/their authorized agent(s) sent or
> caused to be sent a notice similar or identical to Exhibit A, and whose
> mailing address, according to the notice, was in Ohio.

25.     These proposed class definitions are based on the information available to

Plaintiff at this time. Plaintiff expressly reserves his rights to modify the class definition(s)

as necessary to account for any newly learned or changed facts as this case progresses.

26.     Plaintiff expressly reserves her right to, as necessary, conduct a review of

the Defendant's records to ascertain the Class Members.

27.     **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that

there are at minimum, hundreds and likely thousands of members of the Class described

above. The exact size of the Class and the identities of the individual members are

identifiable through Defendant's records, including but not limited to the files containing

the letters announcing the Medical Device Recall involving Maxorb Extra Dressing.

28.     **Commonality:** This action involves questions of law and fact common to

the Class. Such common questions include but are not limited to:

> a.  Whether Maxorb Extra Dressing is defective and unreasonably
>     dangerous, including for the reasons described by Medline in its
>     letters announcing the Medical Device Recall of Maxorb Extra
>     Dressing;

b. Whether Defendant(s) was/were negligent in its design, testing, manufacturing, assembly, marketing, distribution and sale of Maxorb Extra Dressing;

c. Whether Plaintiff and Class Members are entitled to compensatory damages, medical monitoring, and/or punitive damages;

d. Which Defendant(s) manufactured, tested, and/or distributed the product in its (alleged) defective condition; and,

e. What is the business relationship amongst the Defendants.

29.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful, negligent and likely willful conduct.

30.     **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation and complex product liability litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

31.     **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than separate individual cases for each Class Member, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

32.     **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical product design, manufacturing, packaging and product distribution business practices, injury causation, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant(s)' liability and/or claim to damages is common to Plaintiff and each member of the Class. If Defendant breached their duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

33.     **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant(s)' books and records.

## COUNT 1 – STRICT LIABILITY
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST MEDLINE)

34.     Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

35.     At all times relevant hereto, Medline was in the business of designing, manufacturing, developing, testing, distributing, packaging, approving, marketing and selling medical products and medical devices, including the Maxorb Extra Dressing at issue in this lawsuit.

36.     Medline designed, manufactured, tested (and failed to test adequately), distributed, packaged, marketed, and sold, the Maxorb Extra Dressing, placing it into the stream of commerce.

37.     At the time the subject Maxorb Extra Dressing left the control of Medline it was defective and unreasonably dangerous to people who might reasonably be expected

to use it, including the Plaintiff and Class Members. These defects include, but are not limited to, the conditions described in the following paragraphs.

38.     The Maxorb Extra Dressing contained pouches that compromise the device's ability to maintain a sterile barrier.

39.     The Maxorb Extra Dressing also contained or is associated with primary packaging containing patches of burnt or cracked polyethylene that compromise sterility.

40.     The Maxorb Extra Dressing was unreasonably susceptible to causing and inducing infections in patients using the product.

41.     The Maxorb Extra Dressing's design failed to incorporate other designs, technologies and features that would maintain sterility and protect patients and users from infections.

42.     The Maxorb Extra Dressing lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the product and reasonable means to reduce such risks, dangers and harms.

43.     Because of its inability to maintain sterility and its unreasonable propensity to cause and induce patient infections, the Maxorb Extra Dressing was defective and unreasonably dangerous to people who might reasonably be expected to use it, including Plaintiff and Class Members.

44.     The subject Maxorb Extra Dressing used by Plaintiff caused and induced a serious and life-threatening infection, causing Plaintiff GARY FISHER serious injuries and emotional distress.

45.     The subject Maxorb Extra Dressing used by Class Members caused serious and life-threatening infections and/or the heightened risk of developing a serious and life-threatening infection.

46.     The Maxorb Extra Dressing was expected by Medline to reach, and did reach, the user, including Plaintiff and Class Members, without substantial change in the condition from when it was manufactured, sold, and placed into the stream of commerce.

47.     Because of the design and/or manufacturing flaws alleged herein, and the lack of adequate and sufficient warnings, the Maxorb Extra Dressing was defective and unreasonably dangerous to consumers like the Plaintiff and Class Members who might reasonably be expected to use it.

48.     Plaintiff GARY FISHER and Class Members were persons who would reasonably be expected to use the Maxorb Extra Dressing.

49.     Defects in the Maxorb Extra Dressing including its components were a proximate cause of GARY FISHER'S and Class Members' injuries and damages.

50.     Medline is strictly liable to the Plaintiff and Class Members for injuries and damages caused by defects and inadequacies in the design, manufacture, and warnings of the Maxorb Extra Dressing.

51.     As a direct and proximate result of the aforesaid defective and unreasonably dangerous condition of the Maxorb Extra Dressing, Plaintiff GARY FISHER and Class Members suffered injuries and damages.  Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER,  has been and will be

prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Medline, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

<u>**COUNT 2 – NEGLIGENCE**</u>
**(ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST MEDLINE)**

52.     Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

53.     Medline negligently designed, engineered, developed, tested or failed to test, approved, manufactured, fabricated, assembled, equipped, inspected, repaired, labeled, advertised, promoted, marketed, packaged, supplied, distributed, wholesaled, and sold the Maxorb Extra Dressing, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing, including its components and packaging, from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.

54.     Medline owed a duty to Plaintiff and Class Members to design and manufacture Maxorb Extra Dressing to provide reasonable protection to patients who used the product.  In particular, Medline owed a duty to design and manufacture a product that would maintain a sterile barrier and that would not compromise sterility.  This is a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

55.     Medline owed a duty to Plaintiff and Class Members to design and manufacture and to sell and distribute the Maxorb Extra Dressing with packaging that would not introduce contaminants that could compromise patient sterility.  This is also a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

56.     Medline knew or should have known that the Maxorb Extra Dressing would pose a serious risk to patient health and safety given that Medline marketed the product as ideal for moderate and heavy draining of partial and full thickness wounds.  Medline knew that a product unable to maintain sterility that was used in such a manner would pose a serious risk of infection.

57.     Medline knew or should have known that Maxorb Extra Dressing would pose a serious risk to patient health and safety given that Medline marketed the product as being safe and appropriate to use for up to 7 days.  Medline knew that a product unable to maintain sterility that was used in such a manner for such a length of time would pose a serious risk of infection.

58.     As the manufacturer, marketer, supplier, and seller of the Maxorb Extra Dressing, Medline had a duty towards members of the general public, including Plaintiff and Class Members, to use ordinary care to avoid foreseeable risks of injury caused by defects and inadequacies in the Maxorb Extra Dressing.

59.     Medline breached its aforesaid duties, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing from creating an unreasonable risk of harm to persons who might reasonably be expected to use the Maxorb Extra Dressing in foreseeable ways, including Plaintiff and Class Members.

60.     Medline was negligent in failing to provide reasonable features, designs and protections in both the Maxorb Extra Dressing and its packaging that would maintain and ensure sterility.

61.     Medline negligently failed to incorporate into the Maxorb Extra Dressing and its packaging other designs, features and technologies that would ensure sterility and avoid causing or inducing infections.

62.     Medline failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Maxorb Extra Dressing and reasonable means to reduce such risks, dangers and harms.

63.     Medline acted unreasonably in designing, manufacturing, marketing, and selling, a product intended to be used for moderate to heavy draining wounds that was incapable of maintaining sterility and that was unreasonably susceptible to inducing and causing serious infections to users of the product, including the Plaintiff and Class Members.

64.     As a direct and proximate result of the negligence of Medline, Plaintiff and Class Members has incurred substantial damages, which are set forth herein.

65.     Medline's negligent actions and omissions were a proximate cause of the serious personal injuries to GARY FISHER, and of GARY FISHER'S emotional distress, and of the Plaintiff's resulting damages.

66.     Medline's negligent actions and omissions were a proximate cause of the serious personal injuries to Class Members, and of the Class Members' emotional distress, and of the Class Members' resulting damages.

67.     As a direct and proximate result of Medline's negligent actions and omissions,

Plaintiff GARY FISHER and Class Members suffered injuries and damages. Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

 **WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Medline, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

### COUNT 3 – BREACH OF WARRANTIES, MAXORB EXTRA DRESSING
**(ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST MEDLINE)**

 68. Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

 69. Medline knew the particular purposes for which Maxorb Extra Dressing was required and was to be used, and that purchasers and users such as the Plaintiff and Class Members would rely on Medline's skill or judgment in designing, testing, manufacturing, furnishing and selling products and goods suitable for such purposes and uses.

 70. The Maxorb Extra Dressing, including its component parts and its packaging, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous to users, and in fact did cause, serious and permanent injuries to users thereof while being used in a manner reasonably foreseeable to Medline. As a result, the Maxorb Extra

Dressing was unsafe and dangerous for use by the consumer and in particular by the Plaintiff and Class Members.

71.     Medline expressly and impliedly warranted to users of the Maxorb Extra Dressing that Maxorb Extra Dressing was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects. In particular, Medline expressly and impliedly warranted to users of the Maxorb Extra Dressing that it would maintain a sterile barrier, maintain sterility and would not cause or induce infections.

72.     Medline expressly and impliedly warranted to purchasers and users of the Maxorb Extra Dressing that the Maxorb Extra Dressing was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use.  Specifically, Medline expressly and impliedly warranted that the Maxorb Extra Dressing was safe to use for moderate to heavily draining partial and full thickness wounds.

73.     The Maxorb Extra Dressing was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious infections and injuries to users and consumers thereof, including the Plaintiff and Class Members, while being used in a manner reasonably foreseeable to Medline.

74.     As a direct and proximate result of the breach by Medline of its express and implied warranties, Plaintiff GARY FISHER and Class Members suffered injuries and damages.  Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further

obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Medline, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

## COUNT 4 – STRICT LIABILITY
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST AMS)

75. Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

76. At all times relevant hereto, AMS was in the business of designing, manufacturing, developing, testing, distributing, packaging, approving, marketing and selling medical products and medical devices, including the Maxorb Extra Dressing at issue in this lawsuit. It is believed the AMS was or may have been Medline's contract manufacturer of Maxorb Extra Dressing. It is further believed that AMS initiated the recall of Maxorb Extra Dressing.

77. AMS designed, manufactured, tested (and failed to test adequately), distributed, packaged, marketed, and sold, the Maxorb Extra Dressing, placing it into the stream of commerce.

78. At the time the subject Maxorb Extra Dressing left the control of AMS it was defective and unreasonably dangerous to people who might reasonably be expected to

use it, including the Plaintiff and Class Members. These defects include, but are not limited to, the conditions described in the following paragraphs.

79.     The Maxorb Extra Dressing contained pouches that compromise the device's ability to maintain a sterile barrier.

80.     The Maxorb Extra Dressing also contained or is associated with primary packaging containing patches of burnt or cracked polyethylene that compromise sterility.

81.     The Maxorb Extra Dressing was unreasonably susceptible to causing and inducing infections in patients using the product.

82.     The Maxorb Extra Dressing's design failed to incorporate other designs, technologies and features that would maintain sterility and protect patients and users from infections.

83.     The Maxorb Extra Dressing lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the product and reasonable means to reduce such risks, dangers and harms.

84.     Because of its inability to maintain sterility and its unreasonable propensity to cause and induce patient infections, the Maxorb Extra Dressing was defective and unreasonably dangerous to people who might reasonably be expected to use it, including Plaintiff and Class Members.

85.     The subject Maxorb Extra Dressing used by Plaintiff caused and induced a serious and life-threatening infection, causing Plaintiff GARY FISHER serious injuries and emotional distress.

86.     The subject Maxorb Extra Dressing used by Class Members caused serious and life-threatening infections and/or the heightened risk of developing a serious and life-threatening infection.

87.     The Maxorb Extra Dressing was expected by AMS to reach, and did reach, the user, including Plaintiff and Class Members, without substantial change in the condition from when it was manufactured, sold, and placed into the stream of commerce.

88.     Because of the design and/or manufacturing flaws alleged herein, and the lack of adequate and sufficient warnings, the Maxorb Extra Dressing was defective and unreasonably dangerous to consumers like the Plaintiff and Class Members who might reasonably be expected to use it.

89.     Plaintiff GARY FISHER and Class Members were persons who would reasonably be expected to use the Maxorb Extra Dressing.

90.     Defects in the Maxorb Extra Dressing including its components were a proximate cause of GARY FISHER'S and Class Members' injuries and damages.

91.     AMS is strictly liable to the Plaintiff and Class Members for injuries and damages caused by defects and inadequacies in the design, manufacture, and warnings of the Maxorb Extra Dressing.

92.     As a direct and proximate result of the aforesaid defective and unreasonably dangerous condition of the Maxorb Extra Dressing, Plaintiff GARY FISHER and Class Members suffered injuries and damages.  Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER,  has been and will be

prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against AMS, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

<u>**COUNT 5 – NEGLIGENCE**</u>
**(ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST AMS)**

93.     Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

94.     AMS negligently designed, engineered, developed, tested or failed to test, approved, manufactured, fabricated, assembled, equipped, inspected, repaired, labeled, advertised, promoted, marketed, packaged, supplied, distributed, wholesaled, and sold the Maxorb Extra Dressing, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing, including its components and packaging, from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.

95.     AMS owed a duty to Plaintiff and Class Members to design and manufacture Maxorb Extra Dressing to provide reasonable protection to patients who used the product.  In particular, AMS owed a duty to design and manufacture a product that would maintain a sterile barrier and that would not compromise sterility.  This is a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

96.     AMS owed a duty to Plaintiff and Class Members to design and manufacture and to sell and distribute the Maxorb Extra Dressing with packaging that would not introduce contaminants that could compromise patient sterility.   This is also a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

97.     AMS knew or should have known that the Maxorb Extra Dressing would pose a serious risk to patient health and safety given that AMS marketed the product as ideal for moderate and heavy draining of partial and full thickness wounds.  AMS knew that a product unable to maintain sterility that was used in such a manner would pose a serious risk of infection.

98.     AMS knew or should have known that Maxorb Extra Dressing would pose a serious risk to patient health and safety given that AMS marketed the product as being safe and appropriate to use for up to 7 days.  AMS knew that a product unable to maintain sterility that was used in such a manner for such a length of time would pose a serious risk of infection.

99.     As the manufacturer, marketer, supplier, and seller of the Maxorb Extra Dressing, AMS had a duty towards members of the general public, including Plaintiff and Class Members, to use ordinary care to avoid foreseeable risks of injury caused by defects and inadequacies in the Maxorb Extra Dressing.

100.     AMS breached its aforesaid duties, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing from creating an unreasonable risk of harm to persons who might reasonably be expected to use the Maxorb Extra Dressing in foreseeable ways, including Plaintiff and Class Members.

101.    AMS was negligent in failing to provide reasonable features, designs and protections in both the Maxorb Extra Dressing and its packaging that would maintain and ensure sterility.

102.    AMS negligently failed to incorporate into the Maxorb Extra Dressing and its packaging other designs, features and technologies that would ensure sterility and avoid causing or inducing infections.

103.    AMS failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Maxorb Extra Dressing and reasonable means to reduce such risks, dangers and harms.

104.    AMS acted unreasonably in designing, manufacturing, marketing, and selling, a product intended to be used for moderate to heavy draining wounds that was incapable of maintaining sterility and that was unreasonably susceptible to inducing and causing serious infections to users of the product, including the Plaintiff and Class Members.

105.    As a direct and proximate result of the negligence of AMS, Plaintiff and Class Members has incurred substantial damages, which are set forth herein.

106.    AMS's negligent actions and omissions were a proximate cause of the serious personal injuries to GARY FISHER, and of GARY FISHER'S emotional distress, and of the Plaintiff's resulting damages.

107.    AMS's negligent actions and omissions were a proximate cause of the serious personal injuries to Class Members, and of the Class Members' emotional distress, and of the Class Members' resulting damages.

108.    As a direct and proximate result of AMS's negligent actions and omissions,

Plaintiff GARY FISHER and Class Members suffered injuries and damages. Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against AMS, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

## COUNT 6 – BREACH OF WARRANTIES, MAXORB EXTRA DRESSING
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST AMS)

109.    Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

110.    AMS knew the particular purposes for which Maxorb Extra Dressing was required and was to be used, and that purchasers and users such as the Plaintiff and Class Members would rely on AMS's skill or judgment in designing, testing, manufacturing, furnishing and selling products and goods suitable for such purposes and uses.

111.    The Maxorb Extra Dressing, including its component parts and its packaging, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous to users, and in fact did cause, serious and permanent injuries to users thereof while being used in a manner reasonably foreseeable to AMS. As a result, the Maxorb Extra Dressing

was unsafe and dangerous for use by the consumer and in particular by the Plaintiff and Class Members.

112.    AMS expressly and impliedly warranted to users of the Maxorb Extra Dressing that Maxorb Extra Dressing was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects. In particular, AMS expressly and impliedly warranted to users of the Maxorb Extra Dressing that it would maintain a sterile barrier, maintain sterility and would not cause or induce infections.

113.    AMS expressly and impliedly warranted to purchasers and users of the Maxorb Extra Dressing that the Maxorb Extra Dressing was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use.  Specifically, AMS expressly and impliedly warranted that the Maxorb Extra Dressing was safe to use for moderate to heavily draining partial and full thickness wounds.

114.    The Maxorb Extra Dressing was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious infections and injuries to users and consumers thereof, including the Plaintiff and Class Members, while being used in a manner reasonably foreseeable to AMS.

115.    As a direct and proximate result of the breach by AMS of its express and implied warranties, Plaintiff GARY FISHER and Class Members suffered injuries and damages.  Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER,  has been and will be prevented from attending to his

usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against AMS, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

## COUNT 7 – STRICT LIABILITY
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST SOLVENTUM)

116.    Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

117.    At all times relevant hereto, Solventum was in the business of selling and distributing the Maxorb Extra Dressing at issue in this lawsuit into the stream of commerce.

118.    Solventum distributed, packaged, and sold, the Maxorb Extra Dressing, placing it into the stream of commerce.

119.    Solventum distributed and mailed Maxorb Extra Dressing directly to Plaintiff at his residence in Ohio.

120.    At the time the subject Maxorb Extra Dressing left the control of Solventum it was defective and unreasonably dangerous to people who might reasonably be expected to use it, including the Plaintiff and Class Members. These defects include, but are not limited to, the conditions described in detail in Count 1, elsewhere throughout this Complaint, and herein.

121.    The Maxorb Extra Dressing was unreasonably susceptible to causing and inducing infections in patients using the product.

122. The Maxorb Extra Dressing lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the product and reasonable means to reduce such risks, dangers and harms.

123. Because of its inability to maintain sterility and its unreasonable propensity to cause and induce patient infections, the Maxorb Extra Dressing was defective and unreasonably dangerous to people who might reasonably be expected to use it, including Plaintiff and Class Members.

124. The subject Maxorb Extra Dressing distributed to Plaintiff by Solventum and used by Plaintiff caused and induced a serious and life-threatening infection, causing Plaintiff GARY FISHER serious injuries and emotional distress.

125. The subject Maxorb Extra Dressing distributed by Solventum to Class members and used by Class Members caused serious and life-threatening infections and/or the heightened risk of developing a serious and life-threatening infection.

126. The Maxorb Extra Dressing was expected by Solventum to reach, and did reach, the user, including Plaintiff and Class Members, without substantial change in the condition from when it was manufactured, sold, and placed into the stream of commerce.

127. Because of the design and/or manufacturing flaws alleged herein, and the lack of adequate and sufficient warnings, the Maxorb Extra Dressing was defective and unreasonably dangerous to consumers like the Plaintiff and Class Members who might reasonably be expected to use it.

128. Plaintiff GARY FISHER and Class Members were persons who would reasonably be expected to use the Maxorb Extra Dressing.

129. Defects in the Maxorb Extra Dressing including its components were a proximate cause of GARY FISHER'S and Class Members' injuries and damages.

130. Solventum is strictly liable to the Plaintiff and Class Members for injuries and damages caused by defects and inadequacies in the design, manufacture, and warnings of the Maxorb Extra Dressing.

131. As a direct and proximate result of the aforesaid defective and unreasonably dangerous condition of the Maxorb Extra Dressing, Plaintiff GARY FISHER and Class Members suffered injuries and damages. Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Solventum, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

## COUNT 8 – NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST SOLVENTUM)

132. Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

133. Solventum negligently sold, supplied and distributed the Maxorb Extra Dressing, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing,

including its components and packaging, from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.

134. Solventum owed a duty to Plaintiff and Class Members to sell, supply and distribute Maxorb Extra Dressing to provide reasonable protection to patients who used the product. In particular, Solventum owed a duty to sell, supply and distribute a product that would maintain a sterile barrier and that would not compromise sterility. This is a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

135. Solventum owed a duty to Plaintiff and Class Members to sell, supply and distribute the Maxorb Extra Dressing with packaging that would not introduce contaminants that could compromise patient sterility. This is also a basic and fundamental safety feature of any medical device or product, including the Maxorb Extra Dressing.

136. Solventum knew or should have known that the Maxorb Extra Dressing would pose a serious risk to patient health and safety given that the product was marketed by Medline as ideal for moderate and heavy draining of partial and full thickness wounds. Solventum knew that a product unable to maintain sterility that was used in such a manner would pose a serious risk of infection.

137. Solventum knew or should have known that Maxorb Extra Dressing would pose a serious risk to patient health and safety given that the product was marketed as being safe and appropriate to use for up to 7 days. Solventum knew that a product unable to maintain sterility that was used in such a manner for such a length of time would pose a serious risk of infection.

138.     As the supplier, seller and distributor of the Maxorb Extra Dressing, Solventum had a duty towards members of the general public, including Plaintiff and Class Members, to use ordinary care to avoid foreseeable risks of injury caused by defects and inadequacies in the Maxorb Extra Dressing.

139.     Solventum breached its aforesaid duties, in that it failed to exercise reasonable care to prevent the Maxorb Extra Dressing from creating an unreasonable risk of harm to persons who might reasonably be expected to use the Maxorb Extra Dressing in foreseeable ways, including Plaintiff and Class Members.

140.     Solventum was negligent in failing to verify or confirm the safety of the Maxorb Extra Dressing and its packaging before sending and distributing that product directly to Plaintiff for his use.

141.     Solventum acted unreasonably in selling, supplying and distributing, a product intended to be used for moderate to heavy draining wounds that was incapable of maintaining sterility and that was unreasonably susceptible to inducing and causing serious infections to users of the product, including the Plaintiff and Class Members.

142.     As a direct and proximate result of the negligence of Solventum, Plaintiff and Class Members has incurred substantial damages, which are set forth herein.

143.     Solventum's negligent actions and omissions were a proximate cause of the serious personal injuries to GARY FISHER, and of GARY FISHER'S emotional distress, and of the Plaintiff's resulting damages.

144.     Solventum's negligent actions and omissions were a proximate cause of the serious personal injuries to Class Members, and of the Class Members' emotional distress, and of the Class Members' resulting damages.

145.    As a direct and proximate result of Solventum's negligent actions and omissions, Plaintiff GARY FISHER and Class Members suffered injuries and damages. Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Solventum, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

## COUNT 9 – BREACH OF WARRANTIES, MAXORB EXTRA DRESSING
### (ON BEHALF OF PLAINTIFF AND THE CLASS AGAINST SOLVENTUM)

146.    Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

147.    Solventum knew the particular purposes for which Maxorb Extra Dressing was required and was to be used, and that purchasers and users such as the Plaintiff and Class Members would rely on Solventum's skill or judgment in selling, supplying and distributing products and goods suitable for such purposes and uses.

148.    The Maxorb Extra Dressing, including its component parts and its packaging, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous

to users, and in fact did cause, serious and permanent injuries to users thereof while being used in a manner reasonably foreseeable to Solventum. As a result, the Maxorb Extra Dressing was unsafe and dangerous for use by the consumer and in particular by the Plaintiff and Class Members.

149.     Solventum expressly and impliedly warranted to users of the Maxorb Extra Dressing that Maxorb Extra Dressing was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects. In particular, Solventum expressly and impliedly warranted to users of the Maxorb Extra Dressing that it would maintain a sterile barrier, maintain sterility and would not cause or induce infections.

150.     Solventum expressly and impliedly warranted to purchasers and users of the Maxorb Extra Dressing that the Maxorb Extra Dressing was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use.

151.     The Maxorb Extra Dressing was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious infections and injuries to users and consumers thereof, including the Plaintiff and Class Members, while being used in a manner reasonably foreseeable to Solventum.

152.     As a direct and proximate result of the breach by Solventum of its express and implied warranties, Plaintiff GARY FISHER and Class Members suffered injuries and damages. Plaintiff Gary Fisher, in particular, suffered diverse temporary and permanent disabling injuries, by reason of which Plaintiff, GARY FISHER, has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further

obligations; Plaintiff, GARY FISHER, has been and will be prevented from attending to his usual affairs and duties and has lost and will continue to lose great gains he would otherwise have made and acquired.

WHEREFORE, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Solventum, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

**COUNT 10 – MEDICAL MONITORING**
**(ON BEHALF OF PLAINTIFF AND THE**
**CLASS AGAINST MEDLINE, AMS AND SOLVENTUM)**

153. Plaintiff incorporates by reference all the above paragraphs as though fully set forth herein.

154. As a proximate result of Medline's, AMS's and Solventum's acts and omissions, Plaintiffs and Class members have been placed at a heightened risk of developing infections, including serious and life-threatening infections, above the normal base-level risk.

155. As alleged above, the recalled Maxorb Extra Dressing was incapable of providing a sterile barrier and also contained packaging that could compromise sterility. As a result, the Maxorb Extra Dressing was unreasonably susceptible of causing patient infections and placing patients at risk of developing infections.

156. Class members may not develop infections from Maxorb Extra Dressing within a short time after using the product and may not develop those infections until after a long period of time has passed after use of the product.

157. Class members are at an increased risk of developing infections as they used a medical product that, as admitted by Medline in its recall Notice, was incapable of maintaining a sterile barrier and contained contaminants.

158. The risk of developing infections was solely and proximately caused by Defendants' acts and omissions, including: their failure to adequately design, manufacture, package, sell, supply and/or distribute the recalled Maxorb Extra Dressing; their failure to address what are believed to be known issues with the defects in the Maxorb Extra Dressing; their failure to address what are believed to be known issues with contaminants in the packaging of the product; their otherwise negligent acts and omissions in manufacturing, selling and/or distributing a product that made patient infections likely and probable; and their representations that the recalled Maxorb Extra Dressing was safe for use.

159. Defendants owed duties to the Plaintiff and Class members: to ensure and warrant that the Recalled Maxorb Extra Dressing Device was indeed designed and manufactured to satisfy applicable standards imposed by law and regulation; to disclose in a prompt and timely manner to Plaintiff and Class members any defect or other potential health hazard known or discoverable by Defendants; and to ensure that the recalled products were safe, reliable, and non-hazardous for their intended purpose.

160. As alleged above, Defendants' negligent acts and omissions resulted in, among other things, an increased risk of developing infections for Plaintiff and Class Members. Technology, analytical tools, test and/or monitoring procedures exist and are readily available to detect latent or unrecognized health conditions in Plaintiff and class members. These technologies, tools tests and/or monitoring procedures are accepted and widely used

by the scientific and medical community. The existing scientific methods include, but are not limited, to blood and laboratory tests; physical examinations; imaging; other similar methods for examination; biopsies; pathologic, histologic, and oncologic evaluations; and oncologic, histologic, surgical and other necessary medical consultations.

161.    Early detection of serious health conditions in Plaintiffs and Class members is one of the best, and sometimes the only, means to address and treat infections likely to be caused by the recalled products such that they do not cause lasting, permanent harm, illness, or death.

162.    Early detection of serious health conditions in Plaintiffs and class members necessarily allows them to avail themselves of myriad forms of treatment, each of which is capable of altering the course of the infection to alleviate the harm.

163.    The tests for the early detection of infections likely to be caused by the recalled products must be prescribed by a qualified physician, and are conducted according to the latest, contemporary, and widely accepted scientific principles. Because the tests may not be conducted with the type, timing, scope and frequency necessary to identify infection in the absence of use of the recalled products, the prescribed monitoring regime is different from that normally recommended in the absence of use of the recalled products. Further, Plaintiff and Class members require more frequent screenings not within the purview of routine medical exams.

164.    Plaintiff seeks, on behalf of himself and Class members whom he seeks to represent, monetary relief, including compensatory damages for, and the creation of, a fund to adequately finance the costs of necessary testing, evaluations and screening, and other necessary medical consultations for the early detection of infections, illness and disease.

165.    Plaintiff also seeks such further relief as the Court deems equitable and just.

166.    As a direct and proximate result of Defendants' negligent and wrongful conduct, Plaintiff GARY FISHER and Class Members suffered injuries and damages by being subjected to a heightened risk of developing serious infections. This has resulted in injuries and damages to Plaintiff and Class Members.

**WHEREFORE**, Plaintiff GARY FISHER, individually and on behalf of the Class, prays for judgment against Defendants, in an amount in excess of Five Million Dollars ($5,000,000) that would fairly and reasonably compensate Plaintiff and Class Members for their damages plus costs, and for such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**
**(ON BEHALF OF PLAINTIFF AND**
**THE CLASS AGAINST ALL DEFENDANTS)**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for relief against all Defendants as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.    For damages in an amount exceeding $5,000,000 to be determined by the trier of fact;

d.    For punitive damages;

e.    For an order of restitution and all other forms of equitable and/or monetary relief;

f.    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

g.   Awarding pre- and post-judgment interest on any amounts awarded; and

h.   Awarding such other and further relief as may be just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
*/s/ Scott Rankin*
6550 Lakeshore St.
West Bloomfield, MI 48323
Telephone: (248) 562-1320
Facsimile: (888) 769-1774

Richard Shenkan
SHENKAN INJURY LAWYERS, LLC.
6550 Lakeshore St.
West Bloomfield, MI 48323
Telephone: (248-562-1320
Facsimile: (888) 769-1774
*(Pro hac vice application to be submitted)*

Paul J. Komyatte (pro hac vice application
to be submitted)
The Komyatte Law Firm LLC
722 Washington Ave., Unit 202
Golden, CO 80401
Telephone: (303) 489-6554
Facsimile: (720) 528-8072
*(Pro hac vice application to be submitted)*

*Attorneys for Plaintiff and the Class*

# EXHIBIT A



# MEDLINE INDUSTRIES, LP
## IMMEDIATE ACTION REQUIRED
### MEDICAL DEVICE RECALL

10/21/2024

**GARY FISHER**
**5265 PEACE VALLEY RD**
**ROGERS, OH 44455-9744**

*Dear Valued Medline Customer:*

Medline Industries, LP is issuing a recall for specific item(s) and lot(s) of Maxoro Extra CMC/Alginate Wound Dressings. Medline's contract manufacturer has initiated a recall due to defects on pouches that could compromise the device's ability to maintain a sterile barrier. Additionally, patches of burnt or cracked polyethylene have been identified on the inside face of the primary packaging that could also compromise sterility. A device with compromised sterility could result in an infection to the patient if the product is used. The contract manufacturer has indicated that if product has already been used on patients under a three-month time period, patients should be monitored for symptoms during routine follow up. Impacted items shall be discarded. No product shall be returned to Medline. Please complete the required actions below to be issued a credit. Adverse reactions or quality problems experienced with the use of this product shall be reported to Medline, and may be reported to the FDA's MedWatch Adverse Event Reporting program either online, by regular mail or by fax.

**REQUIRED ACTION:**

1. Immediately check your stock for the affected item number and the affected lot numbers listed.

2. Please use the link and the information below to complete your response form electronically or using the enclosed response form below. Please list the quantity of affected product you have in inventory on the form. Even if you do not have any affected product in inventory, please complete and submit the response form.

   The login for completing the response form is:
   Website link: https://recalls.medline.com
   Recall Reference #: R-24-231
   Recall Code: R0DE07D52E

3. Upon completion of the form, please destroy affected product. Medline will issue replacement for the product based upon the quantity and lot numbers identified on the submitted response form.

If you have any questions, contact the Recall Department at 866-359-1704 or recalls@medline.com.

Please accept our sincere apologies for any inconvenience this may have caused. We, like you, place the health and safety of your patients first and foremost.

Sincerely,
Karin Johnson 28054 (kajohnson)
Product Recall Coordinator

**Enclosed:** Response Form

**Medline Industries, LP.**   Three Lakes Drive   Toll Free: 866.359.1704   Email:
Northfield, IL 60093-2753   Website: medline.com   Recalls@Medline.com
Fax: 866.767.1290



**EXHIBIT**

*A*